UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:11-CV-00010-R

WESTFIELD INSURANCE COMPANY                              Plaintiff

v.

B.H. GREEN & SON, INC., a Kentucky
Corporation; THE FEDERAL MATERIALS
COMPANY, LLC, a Kentucky Limited Liability
Company, f/k/a THE FEDERAL MATERIALS
COMPANY I, LLC; ROGERS GROUP, INC.; and
THE BOARD OF EDUCATION OF LYON
COUNTY, KENTUCKY                                                    Defendants

**MEMORANDUM OPINION**

       This matter is before the Court upon Defendant B.H. Green & Son, Inc.'s Motion for Summary Judgment (Docket No. 54), and Plaintiff Westfield Insurance Company's competing Motion for Summary Judgment (Docket No. 55). Plaintiff has responded to Defendant's Motion (Docket No. 65), and Defendant has replied (Docket No. 70). Defendant has also responded to Plaintiff's Motion (Docket No. 67) and Defendant has replied (Docket No. 71). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Motion for Summary Judgment (Docket No. 55) is DENIED; and Defendant's Motion for Summary Judgment (Docket No. 54) is GRANTED.

**BACKGROUND**

This action is based on an underlying state court action. Defendant B.H. Green & Son, Inc. (Green), a construction business, contracted with the Lyon County Board of Education (LCBOE) to construct a middle school ("the building"). After construction, cracks developed in the building's concrete. Lyon County Board of Education filed suit against multiple parties, including Green.

Green is a policyholder of Plaintiff Westfield Insurance Company (Westfield). Westfield has retained attorneys to defend Green under a reservation of rights in the state court litigation. Westfield, seeking to avoid further defense and indemnity, now sues in federal court for a declaratory judgment on whether Green's commercial general liability (CGL) policy covers the current case.

Originally, the building's damage was alleged to be the result of a chemical reaction in the concrete known as an alkali carbonate reaction (ACR). This reaction is allegedly the result of certain impurities present in the concrete supplied to Green by the Defendant Federal Materials Company, LLC (F.M.) from the Defendant Rogers Group, Inc. (Rogers). When F.M. delivered the concrete to the project site, it satisfied all specifications supplied by the Board of Education's architect, Peck Flannery Gream Warren, Inc. (PFGW), and passed all required testing. F.M. and Rogers have brought third-party claims against PFGW, alleging that the problem did not originate with the concrete but resulted from defective design.

At issue is whether Westfield's commercial CGL policy and commercial umbrella policy provided liability coverage to Green under these circumstances. Westfield seeks a declaration that the insurance policies it issued to Green do not provide coverage and thus do not require a

defense of the LCBOE's claims. Green responded to Westfield's complaint with a counterclaim for a declaration that the policies provide such coverage; alternatively, it asserts that coverage must be provided under principles of promissory estoppel or that its premiums must be refunded based on frustration of purpose, failure of consideration, or unjust enrichment. The Court has dismissed Green's claim based on mutual mistake (Docket No. 24).

Specifically, the question is whether the alleged property damage from a latent manifestation of ACR was an "accident," and thus an "occurrence," within the GLP's meaning. To be an accident, the concrete's failure must be a "fortuitous event"—an accident that occurred after the concrete's installation and that was not attributable to poor workmanship.

## GOVERNING LAW

Plaintiff has filed this declaratory judgment action on the basis of the Kentucky Supreme Court's decision in *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69 (Ky. 2010). In that case, the Kentucky Supreme Court explained what constitutes an "occurrence" in a commercial general liability policy. *Id.* By the plain language of the policy, to be an occurrence, the events precipitating the claim must be an accident. "Inherent in the plain meaning of 'accident' is the doctrine of fortuity." *Id* at 74.

A fortuitous event is one that cannot be controlled by the insured because it is "beyond the power of any human being to bring to pass, or it is within the control of third persons" — a "chance event." *Id.* at 76 (internal quotations and edits omitted). In determining whether an event is fortuitous, a court must consider the elements of intent and control; it asks not only whether the insured intended to build a faulty product, but also whether such building was a "chance event beyond the control of the insured." *Id.* at 76, quoting 16 *Holmes' Appleman on*

*Insurance* 2d at § 116.1B. It is axiomatic that poor workmanship is within the control of the contractor; therefore, faulty construction workmanship, standing alone, cannot be an "occurrence" under a CGL policy because it is not an "accident" beyond a contractor's control. *Id.* at 71. *Cincinnati* distinguished *Bituminous Casualty Corporation v. Kenway*, 240 S.W.3d 633 (Ky. 2007), in which a contractor's destruction of the wrong portion of a home in a "flurry of activity" was considered an "occurrence." *Id.* at 77.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting interference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 262 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

4

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[A] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need only consider the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Finally, while the substantive law of Kentucky is applicable pursuant to *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

## DISCUSSION

### I. The comprehensive general liability (CGL) and commercial umbrella policies issued by Westfield provide coverage for Green.

A comprehensive general liability policy is designed to protect the insured from tort liability for personal injury or damage to the property of others; it does not address economic losses incurred due to a breach of contract claim. *See Pryor v. Colony Ins.*, 2013 WL 386880 (Ky. App. 2013). Faulty construction-related workmanship, standing alone, is not covered under a CGL policy. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 72 (Ky. 2010).

However, defective workmanship is not at issue in the case at bar.[1] Because the facts before this Court are distinguishable from those in *Cincinnati*, that case does not dictate the outcome of the present action. This Court determines that the situation in question was a covered "occurrence"; therefore, Westfield has a duty to provide coverage for the claims asserted.

> **A.     The policies issued by Westfield to Green require coverage in the event of an "occurrence."**

Westfield's CGL policy provides that it will cover amounts that the insured becomes obligated to pay as a result of bodily injury or property damage only if they are caused by an "occurrence" that transpires within the coverage territory. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (Docket No. 1-1 at 14).

Westfield's commercial umbrella policy provides coverage for ultimate net loss that the insured becomes obligated to pay as damages due to personal injury or property damage, but only if the personal injury or property damage occurs during the policy period and is caused by an "occurrence," among other restrictions. The commercial umbrella policy defines an "occurrence" as "an accident or offense resulting in 'personal injury' or 'property damage'" (Docket No. 1-2 at 14).

Both the CGL and commercial umbrella policies define "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." (Docket No. 1-1 at 12; Docket No. 1-2 at 12). "Property damage" is defined as "(a) Physical injury to tangible property, including all resulting loss of use of that property. All such

---

[1] Westfield notes that co-defendants in the state court action have alleged defective workmanship as a possible cause of the damage. However, only the LCBOE's claim, which does not allege defective workmanship, is before this Court.

loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it" (Docket No. 1-1 at15; Docket No. 1-2 at 15).

> **B.** **The building's defects and the damages sought by the LCBOE constitute an "occurrence" as defined in the policies issued by Westfield to Green.**

Under Kentucky law, interpretation of insurance contracts is a matter of law to be decided by a court. *Hugenberg v. West American Ins. Co./Ohio Cas. Group*, 249 S.W.3d 174, 185 (Ky. App. 2006). The insured party seeking to establish coverage bears the burden of establishing that the incident at issue falls within the policy's scope. *Secura Ins. Co. v. Gray Construction, Inc.*, 717 F.Supp.2d 710, 714-15. Because Green has established that the construction defects in question constitute an "occurrence" within the policy, the Court finds that coverage is established.

The LCBOE's claims against Green involve an "occurrence" resulting in claims for bodily injury or damage to other property. The LCBOE's claims for damages stem from an accident, which is required for the claim to be a covered "occurrence." The word "accident" has no technical meaning in insurance law; therefore, it should be accorded its plain meaning. *Cincinnati*, 730 S.W.2d, at 74. The plain meaning of "accident" necessarily embraces the doctrine of fortuity, which consists of both intent and control. *Cincinnati*, 306 3.W.3d at 74. "A fortuitous event is one that is 'beyond the power of any human being to bring . . . to pass, [or is] . . . within the control of third persons . . . ." *Id.* at 76, quoting 46 C.J.S. *Insurance* at § 1235.

*Cincinnati* establishes that an insurer has no duty to indemnify a contractor for faulty workmanship. However, *Cincinnati*'s facts are distinguishable from the ones before this Court. *Cincinnati*'s finding of coverage hinged on the fact that the subcontractors' defective

7

workmanship was both observable and controllable by the insured party throughout construction. *See Cincinnati*, 703 S.W.2d, at 77 (emphasizing the "protracted improper construction" of the home "over a period of weeks"). However, the case at bar involves no faulty performance that Green might have observed or controlled. Indeed, the concrete that Green supplied satisfied the specifications of the LCBOE's architect and all relevant inspectors. Westfield contends that Green should have expanded upon the owner's own specifications; such requirements would extend beyond the scope of "workmanship" when not part of the contract work. "If the contractor was required, at its peril, to check and double check all plans given it *and required to keep an engineering force for the purpose of interpreting these plans,* and was not permitted to follow the orders of the engineering force of its superior, then the costs of public improvement would be so increased as to make them almost prohibitive." *City of Louisville v. Padgett*, 457 S.W.2d 485, 490 (Ky. 1970).

Westfield argues that Green's failure to take additional steps to prevent ACR, such as changing the owner's design specifications and imposing ACR testing, means that Green had "control" within the meaning of *Cincinnati*. However, neither the law nor the contract required such steps. *Cincinnati* emphasized the contractor's ability to control its subcontractors. *See Cincinnati*, 306 S.W.3d, at 75. At issue here is Green's ability to control not its own subcontractors, but the owner and its architect, who design determined the design steps taken to avoid ACR and could inspect any on-site functions. Green lacked "control" over the design function and was under no obligation to act to the contrary.

Because the elements contributing to the concrete's impairment were thoroughly beyond Green's control, the resultant damage to the building is properly characterized as a fortuitous event and ultimately an "accident." Other courts have recognized that similar hidden defects in

8

materials render their ultimate failure "accidental" and still within the "sudden and unexpected" character of an accident. *See, e.g.*, *Amerisure Mutual v. Paric Corp.*, 2005 WL 2708873 (E.D. Mo. 2005). In *Irving Materials, Inc. v. Zurich American Insurance Co.*, 2007 WL 1035098 (S.D. Ind. 2007), the court held that ACR damage caused by an unknown component in aggregate constituted an "occurrence" under a CGL policy, emphasizing that the "unexpected" nature of the concrete failure was consistent with the definition of "accident."

Similarly, the ACR damage in the case at bar constitutes an "accident" and is thus an "occurrence" within the meaning of the CGL policy, consistent with *Cincinnati*. Because the building's damage due to ACR was caused by an "accident" and was an "occurrence" under the policy, Westfield has a duty to provide a defense to the LCBOE's claims against Green.

**C. Because Green's concrete supplier was a "subcontractor" within the policy's meaning, the "your-work" exclusion does not relieve Westfield from its obligation to provide coverage.**

Westfield argues that even if the LCBOE claim was a covered "occurrence" under the applicable policies, there was nonetheless no coverage for such a claim as a result of the "your-work" exclusion of the policies.[2] However, according to the subcontractor exception to such exclusions, the exclusion does not apply if a subcontractor performed the damaged work itself or the work out of which the damage arises on the insured's behalf.

---

[2] Exclusion j. (6) of the CGL policy excludes coverage of "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." The commercial umbrella policy includes a similar exclusion. The CGL policy defines "your work" as "(1) Work or operations performed by you on your behalf; and (2) Materials, parts, or equipment furnished in connection with such work or operations." The commercial umbrella policy includes a similar definition.

Additionally, Exclusion L excludes "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" As discussed below, this exclusion does not apply to work from which the damage arises if a subcontractor performed the work for Green.

9

Westfield maintains that according to *McBride v. Acuity*, 2013 WL 69358 (6th Cir. 2013), Kentucky law disallows recovery for damage to other elements of a contractor's work that are damaged due to work on another part of the building. However, *McBride*, a faulty workmanship case, is inapposite. *McBride*'s analysis of the "other property" issue was limited to whether the subcontractor exception could be used to create coverage for faulty workmanship under the definition of "occurrence." *McBride* did not address the subcontractor exception where no faulty workmanship has occurred and the situation therefore constitutes an "accident."

Westfield argues that various personnel in the construction industry refer to F.M. as a "supplier" rather than a "subcontractor." However, this does not dictate the relationship's legal characterization. No Kentucky case defines "subcontractor" within the "your-work" exclusion to a CGL policy or its exception for subcontractors. Similarly, no Ohio law defined the term "subcontractor" in such circumstances in *Mosser Construction Inc. v. Travelers Indemnity Co.*, 430 Fed. Appx. 417 (6th Cir. 2011). *Mosser* requires the Court to avoid relying on cases interpreting the Miller Act and inapplicable state laws. "Although the Miller Act cases *Weybrecht's* [a case interpreting "subcontractor" in the performance bond context] are instructive, they are not controlling because they interpret 'subcontractor' in contexts different from that at issue here." *Mosser*, 430 Fed. Appx. 417, 422-23. Accordingly, Westfield's emphasis upon similar interpretations of "subcontractor," including those in Kentucky bond and lien cases, is misplaced. Applying the teaching of *Mosser*, the Court will look to relevant foreign authorities. *Id.*

*Mosser* concluded that because the term "subcontractor" as used in the "your-work" exclusion is ambiguous, it must be construed strictly against the insurer and in favor of the insured. *Id.* at 424. While the insured's interpretation of "subcontractor" must be reasonable, it

need not necessarily be the *most* reasonable interpretation possible. *Id.* This principle governs the interpretation of Green's policy, which involved the same standard clause as that at issue in *Mosser*.

Whether F.M. can be properly considered a contractor depends on whether it manufactured the concrete according to the Green's specifications. "For a material supplier who does not perform work at the site to be a subcontractor, the supplier must manufacture the material according to specifications supplied by the general contractor, and, its materials contract with the general contractor must explicitly incorporate terms from the master contract or otherwise explicitly indicate that the materials at issue are manufactured or supplied specifically for the master contract's project." *Id.* at 425. *Mosser* considered that the supplier manufactured the product at its own facility using its own equipment and that the project's purchase order explicitly identified the relevant project as the job for which the materials were supplied. *Id.* Ultimately, *Mosser* held that the material supplier in question qualified as a subcontractor within the meaning of the subcontractor's exception. *Id*

*Mosser* requires this Court to characterize F.M. as a subcontractor within the meaning of the exception to the "your-work" exclusion's in Westfield's policy. The parties do not dispute that F.M. mixed the concrete at its own facility, using its own equipment. F.M.'s president averred that the architects' project specifications were specific to the project itself and that two of the three mixes used in the Lyon County Middle School were uncommon mixes (Deposition of F.M. President Chris Bright, 37:6-40:5). Furthermore, the purchase order from Green to F.M. specifically identified the Lyon County Middle School project as the job for which the concrete was to be supplied, incorporating the specifications dictated by the owner's architect. Finally,

11

F.M. delivered the concrete to the job site, further suggesting subcontractor status. *Mosser*, 430 Fed. Appx., at 419.

The above analysis categorizes F.M. as a "subcontractor." Therefore, regardless of whether the exclusion applies, Westfield has a duty to defend Green against the LCBOE's claims.

**II.     The applicability of the economic loss rule is beyond the scope of this Court's ruling.**

Westfield argues that where solely economic damages are sought, Kentucky law provides for no strict liability or negligence claim in tort. The economic loss rule precludes a commercial purchaser from suing in tort to recover for economic losses arising from a product's malfunction; such damages must instead be pursued under contract law. *Giddings v. Industrial Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). The LCBOE's action, however, is not before this Court. Accordingly, the Court declines to make such a ruling.

**III.    Because the Court has determined that coverage for the LCBOE claim exists on the contract between Green and Westfield, it need not reach Green's alternative claims.**

Green's counterclaim asserts that if the defective concrete did not lead to an "occurrence" under its insurance contract with Westfield, it is entitled nonetheless to coverage under the theory of promissory estoppel.[3] Alternatively, it argues that the equitable theories of failure of

---

[3] Promissory estoppel exists in order to render enforceable gratuitous promises that would generally be unenforceable because they are unsupported by consideration. *Jan Rubin Assocs., Inc. v. Housing Auth. of Newport*, 2007 WL 1035016 at *14. A claim for promissory estoppel may arise where "a party reasonably relies on a statement of another and materially changes his position in reliance on that statement." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3e 636, 642 (Ky. Ct. App. 2003). A claim of promissory estoppel requires proof of "(1) a promise; (2) the promisee reasonably relies upon the promise by acting or forbearing to act upon the strength of it; (3) the promisor, at the time of making his promise, foresees or expects that the promise would act or forbear

consideration,[4] unjust enrichment,[5] and frustration of purpose[6] would apply. Because the Court finds that the contract obligates Westfield to provide a defense to the LCBOE's claim, these claims in the alternative are moot and need not be reached by the Court.

## CONCLUSION

The LCBOE's claims do not allege faulty workmanship; Green lacked control over the LCBOE, its architect, and the project specifications for the design of concrete mixes; the concrete mix satisfied all required inspection; and any defects were not immediately observable. Therefore, any damage from ACR is properly characterized as an "accident" and is therefore an

---

in reliance upon it; and (40 enforcement of the promise is necessary to avoid an injustice." *Davis v. Siemens Medical Solutions USA, Inc.*, 399 F.Supp.2d 785, 795 (W.D. Ky. 2006) (citing to numerous Kentucky authorities).

A claim for promissory estoppel is not cognizable where a contract governs the subject matter of the purported promise that a party seeks to enforce. *Jan Rubin Assocs.*, 2007 WL 1035016 at *14 (citing *Shane v. Bunzl Distrib. USA, Inc.*, 200 Fed. Appx. 397, 404 (6th Cir. 2006) (affirming the "widely accepted principle that promissory estoppel is applicable only in the absence of an otherwise enforceable contract" on the subject matter)). Green offers no evidence that Westfield represented that it would provide coverage for the type of claims asserted by the LCBOE. Because no such assurances existed, Green's claims for coverage by promissory estoppel cannot stand.

[4] Green's claim based on failure of consideration is without merit. "Consideration is '[a] benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Smith v. Bethlehem Sand & Gravel Co., LLC*, 342 S.W.3d 288, 293 (Ky. 2011) (citing *Phillips v. Phillips*, 171 S.W.2d 458, 464 (1943). Were there occurrences that satisfied the terms of Green's coverage by Westfield, Westfield would have been obligated to provide a defense and indemnification. Because this obligation was a detriment to Westfield, adequate consideration existed.

[5] Green's claim based on unjust enrichment also fails. A successful claimant of unjust enrichment must establish: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d, 73, 78 (Ky. App. 2009). In exchange for its premiums, Green received insurance contracts obligating Westfield to provide coverage to it as stated in its policies. Had covered occurrences happened during the policy period, Green would have received the benefit of coverage. The fact that the claims of the LCBOE were not covered do not suggest that Westfield inequitably retained Green's premiums. Accordingly, no unjust enrichment occurred.

[6] "[W]hen the performance of a contract is based upon the continued existence of a given thing, the existence being assumed as a basis of the contract, performance is excused when the existence fails. . . . The same rule applies when a contemplated situation fails to materialize." *R & R Erectors, Inc. v. Peak Construction, Inc.*, 2008 WL 901178 (Ky. App. 2008). No event occurred to frustrate the purpose of the insurance contracts, nor did Green expect that Westfield would provide coverage for breach of contract claims. Frustration of purpose does not apply.

"occurrence" within the meaning of the CGL policy. Accordingly, Plaintiff's Motion for Summary Judgment (Docket No. 55) is DENIED; and Defendant's Motion for Summary Judgment (Docket No. 54) is GRANTED.